UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

      Plaintiff,

Criminal Case No. 13-CR-20369-2
Civil Action No. 17-CV-14184

vs.

HON. BERNARD A. FRIEDMAN

RUFUS DEON WILSON,

      Defendant.

_____/

### OPINION AND ORDER DENYING DEFENDANT'S MOTION TO VACATE, GRANTING HIS MOTION TO AMEND THE MOTION TO VACATE, GRANTING HIS MOTION FOR A REPLY, AND GRANTING HIS MOTION TO SUPPLEMENT THE REPLY

This matter is before the Court on defendant's motion to vacate [docket entry 170], motion to amend that motion to vacate [docket entry 177], "motion for reply" [docket entry 186], and motion to supplement his "motion for reply" [docket entry 188]. Plaintiff has responded to the motions to vacate and to amend. Pursuant to E.D. Mich. LR 7.1(f)(2), the Court shall decide these motions without a hearing.

### FACTS

The Sixth Circuit's opinion affirming defendant's conviction summarized the relevant facts as follows:

> Lebron Nunn is a convicted felon and experienced confidential informant. In 2012, when his brother Roman Whitfield was charged with various federal crimes, Nunn approached the investigating federal agent, Joseph Nether, to make a deal. Nunn offered to work as a confidential informant if Nether told the prosecutor of Nunn's cooperation. At some point, Nunn informed the agent that Nunn's step-brother, defendant John Davis, trafficked in firearms and narcotics. Nether reviewed Davis's criminal history, which showed prior drug and firearm-related convictions, and encouraged Nunn to attempt to buy guns and drugs from Davis. Shortly thereafter, Davis

arranged a sale of stolen firearms to Nunn and, separately, an illegal drug sale.

In 2013, Nunn told Nether that Davis was interested in conducting an armed home invasion of a drug dealer. The agent again reviewed Davis's criminal history and observed that Davis had been convicted of armed home invasion and firearms-related offenses. Nether advised Nunn to set up a meeting between Davis and Nether (undercover) so Nether could present Davis with an opportunity to rob a drug dealer.

The first meeting was on April 23, 2013. This and the following meetings were video and audio recorded. Nether presented the following fictitious scenario: he was a disgruntled drug courier seeking to rob up to 10 kilograms of narcotics from a drug supply house. Nether said there would be at least two armed people inside so he needed "a crew of professionals" to rob the supply house and "didn't want any amateurs[,] just professionals, people that had done this before." Davis said he could do it and would find three accomplices.

Davis left the meeting with Nunn, who was wearing a recording device. Davis suggested that they rob Nether after the drug pick-up instead of going inside the house with armed guards. Later, Davis made several calls to co-defendant Rufus Wilson. The next day, in a recorded phone call to Nunn, Davis said he and Wilson had discussed an alternative to the proposed drug house robbery. Two days later, in another recorded call, Davis said he had been sitting up all night making a plan with Wilson. Then Davis asked Nunn "how [Nunn] [felt] about the boy," referring to Nether. Nunn said he liked Nether, and Davis expressed disappointment in his voice, responding, "Okay well, alright." Later that day, Davis met Nunn to discuss the robbery. Davis suggested that, instead of going into the drug house, they crash their car into Nether and "[t]ake whatever he got off of him."

Nether, Nunn, and Davis met for a second time on April 26. During the meeting, Davis told Nether that Wilson was "talking 'bout going up in there shootin'" and "going in there [and] lay everybody down." Davis explained that both he and Wilson would be shooting: "[L]isten to me, this is what I'm telling you. We both shooters." As he said this, he made hand gestures as if he was holding two handguns. Davis said he would not hesitate to shoot: "[M]otha fuckers getting twitchin' and moving, [Wilson] ain't gonna, I'm not gonna hesitate." Wilson called Davis midway through the meeting and Davis handed the phone to Nether. Nether later testified that he

2

explained the robbery plan directly to Wilson so he would "have the whole story for himself so he could make his own decision" about participating. Wilson agreed to participate by responding affirmatively at various times, like to Nether's statement, "I mean is this cool to you?," by saying "Oh, yeah it[']s cool" and, "[i]t's a go on this end." After the meeting, Davis told Nunn that they should kill Nether: "That's why I asked you how you feel about the nigga . . . We don't need nothing come back to you, or us . . . . [D]ust they ass off or dust his ass off with 'em."

On April 29, Nether, Nunn, and Davis met again. This time, Wilson attended in person. On the way to the meeting, Nunn picked up Davis. During the ride, Davis said, "me and [Wilson] was talkin . . . he saying it's a risk us going up in that [house] 'cause there ain't no telling . . . ." Davis said he wanted to rob Nether instead: "[R]un straight into his Mother fucker car . . . boom! . . . [A]nd whatever he got on him we steal." Nunn confirmed, "[i]t's understood. Fuck I told you I'm down, fuck it. We knocking his ass, fuck it, knocking his ass off, fuck it. I'm ready, hear me." Davis responded, "Knock him off, nigga." Then they picked up Wilson. When he got into the car, he said about Nether, "[d]ig what I'm saying, that nigga can't leave. . . . That nigga can't leave man." To keep the robbery quiet, Wilson said, "I want, knives man. I cut all them niggas up. . . . Ain't gotta be no pop, pop, pop, pop, pop . . . . That's how I'm gonna do it." Davis responded, "when it come to this kind of money you got to spill blood. Aint no gentlemen." Wilson observed that if Nether were to leave the scene, "[h]e gonna testify [and then w]e ain't got nothing. This nigga done left the scene, he set us up . . . . That nigga can not leave that scene." Davis repeated his plan to run into Nether's car, "[w]hatever he got, whatever he got on him, we gonna get that . . . . Fuck the house . . . ." Then they discussed taking everything from Nether, "the money he got, the phone, everything." Davis repeated that he wanted to "take his cell phone, when, when he outta there, take everything from him . . . . Take his pants off of him. Leave him in that bitch naked." Just before they met Nether, Davis said they should continue to pretend they were going to rob the drug house as originally proposed by Nether.

At the April 29 meeting, the men discussed wearing tactical gear during the robbery and wrote down their clothing sizes for Nether. After the meeting, Nunn, Davis, and Wilson again talked about killing Nether. Davis said, "He dead. Let's kill his ass." Davis and Wilson observed that if Nether got all ten kilograms, he would abscond with the drugs. Wilson responded, "He gotta die . . . blow his brains out anyway . . . . Blow his brains out."

> On May 2, Nether called Davis to make sure everyone was still participating in the robbery, which Davis confirmed. That day, Nunn, Davis, and Wilson met Nether in a parking lot, where Nether asked if they were "still good with everything?" They confirmed by nodding their heads and stating, "yeah." They followed Nether to a warehouse to get the tactical gear and a van. There, Nether said he would be picking up two kilograms of powder cocaine and one kilogram of crack cocaine. Shortly thereafter, federal agents waiting nearby arrested defendants. As he was arrested, Wilson threw a handgun into a nearby stairwell. The gun was loaded with two rounds of ammunition in the magazine and a hollow-point bullet in the chamber. Trial testimony later established that a hollow-point bullet typically causes more serious wounds to human targets. Wilson also had an 8-inch serrated-blade knife and a knit cap, and was wearing latex gloves. Next to Davis, the agents found latex gloves and a black mask.

*United States v. Wilson*, 653 F. App'x 433, 435–37 (6th Cir. 2016).

In June 2014, a jury found defendant guilty of the following five crimes: Count 3, conspiracy to murder a federal employee, 18 U.S.C. §§ 1114, 1117; Count 4, conspiracy to possess with intent to distribute a controlled substance, 21 U.S.C. § 841(a)(1), (b)(1)(A); Count 5, possession of a firearm in furtherance of a drug trafficking crime, 18 U.S.C. § 924(c)(1)(A); Count 6, felon in possession of a firearm 18 U.S.C. § 922(g); and Count 7, possession with intent to distribute a controlled substance, 21 U.S.C. § 841(a)(1), (b)(1)(C). The Court sentenced defendant in November 2014 to the following terms of imprisonment: Count 3, 420 months; Count 4, life; Count 5, 60 months; Count 6, 420 months; and Count 7, 360 months.[1]  Defendant immediately appealed his conviction and sentence.  In June 2016, the Sixth Circuit affirmed the Court's judgment.  In June 2017, the Supreme Court denied defendant's petition for a writ of certiorari.

In December 2017, defendant filed the instant motion to vacate under 28 U.S.C. § 2255, and in January 2018, he filed a motion to amend the motion to vacate, seeking to add five more claims.  The Court ordered the government to respond, which it did in March 2018.  In April

---

[1] The sentences for Counts 3, 4, 6, and 7 run concurrently, while Count 5 runs consecutively.

2018, defendant filed a "motion for reply"—which includes defendant's proposed reply—and in May 2018 he filed a motion to supplement that reply. To decide the motion to vacate, the Court will consider all of defendant's filings, including the proposed amendments to the instant motion, the reply, and the proposed supplement to the reply.

**LEGAL STANDARD**

Section 2255(a) states that a federal prisoner

> claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

Here, all of defendant's claims raise only constitutional issues, most of which are ineffective-assistance-of-counsel claims. The Supreme Court has stated that the Court need correct a constitutional error only if it "had substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993) (quotation marks and citation omitted). For habeas petitioners to obtain relief on their constitutional claims, they must show "actual prejudice." *Id.* Critically, a habeas petitioner cannot "show that appellate counsel was ineffective for failing to raise a claim on appeal if the underlying claim itself lacks merit." *Green v. MacLaren*, No. 17-1249, 2017 WL 3973956, at *2 (6th Cir. Aug. 2, 2017).

**DISCUSSION**

Plaintiff asserts the following 15 claims for relief:

I. Counsel[2] was ineffective for failing to object to the indictment under Fed. R. Crim. P. 12(b) or to file a motion to dismiss it.

II. Counsel was ineffective for failing to object to erroneous jury instructions on Count 3.

---

[2] Each reference to "counsel" in this opinion refers to defendant's trial counsel unless otherwise noted.

III. Counsel was ineffective for failing to object to erroneous jury instructions on Count 5.

IV. Counsel was ineffective for failing to attend defendant's entrapment-defense hearing; this violated defendant's due-process right to have counsel present.

V. Appellate counsel was ineffective for failing to raise on appeal counsel's absence from the entrapment-defense hearing.

VI. Counsel was ineffective for failing to object to prosecutorial misconduct committed during closing arguments.

VII. Counsel was ineffective for failing to object to prejudicial evidence unrelated to the case.

VIII. Counsel was ineffective for failing to object to prior convictions being read to the jury.

IX. Counsel was ineffective for failing to object to incorrectly calculated sentencing guidelines.

X. The Court improperly considered defendant an Armed Career Criminal.

XI. Counsel was ineffective for failing to object to the jury receiving transcript binders.

XII. Counsel was ineffective for failing to file a motion to suppress Nunn's audio recording.

XIII. Appellate counsel was ineffective for failing to object to the government's "sentencing manipulation."

XIV. Counsel was ineffective for failing to subpoena Nunn.

XV. Appellate counsel was ineffective for failing to raise the fact that counsel did not make a motion under Fed. R. Crim. P. 29.

*Claim I.* Defendant argues that counsel was ineffective for failing to object to Count 3 of the indictment, which he claims is defective for several reasons. But Count 3 is not defective: it clearly charges defendant with a conspiracy to murder a federal agent; adequately

6

identifies the conspiracy's object; lists the conspirators' charged overt acts; and, taken as a whole, charges defendant with conspiring willfully. As the issues defendant raises are meritless, counsel was not ineffective for failing to raise them. Moreover, defendant fails to explain why the Court should ignore the "general rule" that "an indictment cannot be questioned on a motion under Section 2255." *Eisner v. United States*, 351 F.2d 55, 56 (6th Cir. 1965).

*Claim II.* Defendant argues that the jury instructions for Count 3—which charged defendant with conspiracy to murder a federal employee—were improper. The Court, after reading the Sixth Circuit's Pattern Instruction 3.01A (the general conspiracy instruction), explained to the jury that the government was asserting that the conspiracy's object was the murder of a federal employee. Trial Tr. June 3, 2014, pp. 18–19. Defendant objects that this is equivalent to a "murder charge." Def.'s Mot. p. 16. This is incorrect. Common sense and 3.01A's commentary requires the Court to inform the jury of the alleged conspiracy's object. Therefore, the instruction was proper, and counsel was not ineffective for failing to object to it.

*Claim III.* Defendant argues that Count 5—entitled, "Possession of a Firearm in Furtherance of a Drug Trafficking Crime, Aiding and Abetting – 18 U.S.C. §§ 2, 924(c)"—charged him only with possessing a firearm in furtherance of a drug trafficking crime, and not a crime of violence. Thus, he says, the Court erred by instructing the jury that he could be liable under Count 5 for possessing a firearm in furtherance of a drug trafficking *or* a crime of violence. Def.'s Mot. pp. 21–26. But defendant's argument focuses only on Count 5's title and ignores its body, which charges: "[Defendant] did knowingly possess a firearm . . . in furtherance of a crime of violence *and* a drug trafficking crime." Indictment Count 5, ¶ 2 (emphasis added). Therefore, defendant's claim is meritless, and counsel was not ineffective for failing to raise it.

*Claims IV and V.* In May 2014, the Court held a hearing on the government's motion to preclude defendants from asserting an entrapment defense at trial. Counsel responded to the government's motion and had co-defense counsel appear on his behalf. The Court denied the government's motion and allowed defendants to assert entrapment defenses at trial. Defendant argues that counsel's absence prejudiced him and allowed the trial to continue. Defendant is incorrect. First, the Court strongly doubts that counsel's absence violated defendant's rights because defendant fails to show that a pretrial hearing on potential defenses is a critical stage of litigation. Second, defendant fails to articulate how he was prejudiced. The motion was decided in his favor, and he has not shown how his counsel, had he appeared at the hearing, could have prevented the trial. Because Claim IV is meritless, appellate counsel was not ineffective for failing to raise it.

*Claim VI.* Defendant contends that the government improperly argued in its closing that he robbed and murdered someone. The Court disagrees. The government's theory of the case—clear from the beginning—was that defendant *planned* to murder Agent Nethers, not that he actually murdered him. Consequently, even if it misspoke and stated that defendant murdered Agent Nethers (as the transcript suggests), this mistake was harmless, especially because Agent Nethers testified at trial. Thus, Claim VI is meritless and counsel was not ineffective for failing to raise it.

*Claim VII.* Count 7 charged defendant with possession with intent to distribute crack cocaine from May 2013 to October 2013. While defendant was in jail awaiting trial, he called his girlfriend asking her to sell crack cocaine he had hidden in a black scarf in her home. Unbeknownst to him, these calls were recorded. The government executed a search warrant on the home and found the scarf and cocaine. It introduced the scarf, cocaine, and recorded calls at

trial to prove Count 7. Thus, to the extent defendant believes that this evidence was admitted as prior bad act testimony under Fed. R. Evid. 404(b), he is wrong. The evidence is highly probative of his guilt on Count 7, and counsel was not ineffective for failing to object to its admission.

*Claim VIII.* Defendant argues that counsel was ineffective for failing to object to the admission of his criminal history. Defendant's entrapment defense "requires proof of two elements: (1) government inducement of the crime, and (2) lack of predisposition on the part of the defendant to engage in the criminal activity." *United States v. Khalil*, 279 F.3d 358, 364 (6th Cir. 2002). One relevant factor in determining a defendant's predisposition is his "prior criminal record." *Id.* As the Sixth Circuit noted on appeal defendant's criminal history was relevant, "persuasive evidence that [he was] predisposed to commit violence, robbery, and drug-related offenses." *Wilson*, 653 Fed. App'x at 439. Counsel was not ineffective for failing to object to the admission of defendant's criminal history.

*Claims IX and X.* Defendant argues that the Court incorrectly calculated his sentencing guideline range for Count 3 and considered him an armed career criminal for Count 6. But even assuming that the Court's Count 3 sentence was incorrect—and that the error would be cognizable, *see Jones v. United States*, 178 F.3d 790, 796 (6th Cir. 1999) (stating that sentencing errors are not usually cognizable under § 2255)—that error "did not affect [defendant's] substantial rights because [he] was subject to a mandatory life sentence for Count 4." *Id.* at 21. For the same reason, even if the Court incorrectly considered defendant an armed career criminal on Count 6, his substantial rights were not affected. *Id.* Thus, defendant fails to show the "substantial and injurious effect" or "actual prejudice" required by *Brecht*, his claim is meritless, and counsel was not ineffective for failing to object to the Court's calculations.

*Claim XI.* During the trial, the government provided the jurors non-evidentiary transcripts to help them understand an audio recording. Co-defense counsel objected. The Court allowed the jurors to use the transcript, but reminded them that only the recording, not the transcript, was evidence. At some point, the government's counsel noticed a juror leaving the courtroom with a transcript; the Court directed the clerk to retrieve it. Later, when the jury asked for transcripts during deliberations, the Court—with the government and defense counsels' approval—told it that the transcripts were not evidence. Though defendant titles this claim an ineffective-assistance claim, his argument is not actually about counsel, but the Court. He contends that the Court should have stopped the rogue juror from leaving while still holding the transcript binder and that it should have verified the transcript's accuracy before letting the jury see it. Def.'s Am. to the Mot. pp. 6, 10. Defendant's argument barely mentions counsel and fails to show how he was ineffective. Finally, defendant has "not established that [he was] prejudiced. *See Jacob*, 377 F.3d at 582 (any error was harmless where district court repeatedly instructed that the transcript was not evidence and a substantial portion of the tape was not inaudible)." *Wilson*, 653 F. App'x at 446.

*Claim XII.* Defendant argues that "[c]ounsel put forth no effort to suppress" Nunn's recording. Def.'s Am. to the Mot. p. 15. But he is wrong. As defendant admits in his amendment to his motion, counsel did in fact object during trial to the recording's admission, and the docket shows that counsel filed a motion in limine seeking to exclude the recording. *Id.* at 14; [docket entry 60]. Defendant's contention (again) seems directed not at counsel, but at the Court's ruling. He fails to show that his counsel was ineffective on this claim.

*Claim XIII.* Defendant argues that his appellate counsel was ineffective for failing to raise the issue of "sentencing manipulation for drug type." Def.'s Am. to the Mot. p. 18. The

10

Sixth Circuit does not "recognize the defenses of sentencing entrapment or sentence manipulation." *United States v. McGee*, 510 F. App'x 377, 385 (6th Cir. 2013). Appellate counsel was not ineffective for failing to raise a non-existent defense.

*Claim XIV.* Defendant argues that counsel was ineffective for failing to subpoena Nunn to support defendant's entrapment defense. He fails to explain, however, what Nunn would have said and, by extension, fails to show whether Nunn would have aided his defense. And even had Nunn's testimony been favorable, its value would have been merely marginal given both defendant's opportunity to fully present his entrapment defense using other evidence and the overwhelming evidence that militated against his entrapment defense.

*Claim XV.* Finally, defendant argues that appellate counsel was ineffective for failing to address counsel's failure to make a Rule 29 motion. But because counsel did in fact make a Rule 29 motion, Trial Tr. June 3, 2014, pp. 4–5, appellate counsel was not ineffective for failing to raise this meritless issue.

For the foregoing reasons,

IT IS ORDERED that defendant's motion to amend the motion to vacate is granted.

IT IS FURTHER ORDERED that defendant's "motion for reply" is granted.

IT IS FURTHER ORDERED that defendant's motion to amend his reply is granted.

IT IS FURTHER ORDERED that defendant's motion to vacate is denied.

Dated: May 24, 2018　　　　　　　　　　s/Bernard A. Friedman
Detroit, Michigan　　　　　　　　　　　BERNARD A. FRIEDMAN
　　　　　　　　　　　　　　　　　　　SENIOR UNITED STATES DISTRICT JUDGE

**CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on May 24, 2018.

                                                s/Johnetta M. Curry-Williams
                                                Case Manager